Judge Ewing
delivered the Opinion of the Court.
An execution- was issued from the clerk’s office of the? Owen Circuit Court, in favor of Hamilton, against the estate of Zachariah Johnson, deceased, which was placed in the hands of Wright, a deputy sheriff, and was levied upon a negro woman slave by the name of Marsha, who was sold, and the plaintiff Sanders became the purchaser, at the price of two hundred and eighty dollars. Afterwards, an action of detinue was brought against Sanders by one William Sale, and said slave was recovered from him by paramount and superior title. And this suit was brought by Sanders, against Hamilton, the plaintiff in said execution, for indemnity. After the proof on the part of the plaintiff, was completed, the Court, on the motion of the defendant, instructed the jury as in case of a nonsuit.
Four questions are involved in this record:—
First. Is the plaintiff in an execution liable to the purchaser of personal property sold under his execution^ when the title has failed — in any case?
Second. If so, to what extent?'
Third. What is the appropriate form of action to attain the remedy?
Fourth. Was it proper in this case, for the Court to instruct the jury as in case of a nonsuit?
If a plaintiff in an execution has been instrumental in causing the property of a stranger to be sold, we can see no principle of reason, or of law, that would exonerate him from responsibility to the purchaser.
The exhibition and sale of property by an individual, as his own, is regarded by law as sufficient to make him a warrantor of the 'title; and we can see .no principle *551 •which would exempt him, from liability, when he has been instrumental in effecting the same object by color of an execution. He is guilty of the same wrong, and and has been instrumental in practicing the same delusion, upon the purchaser, in the one case as in the other. And it can be no justification, or palliation of his wrong, that he has accomplished his object by color of an execution. His execution affords him no warrant to levy upon the property of a stranger, and if he does it, or procures it to be done, he is guilty of an abuse of the process of the court, which cannot sanctify the deed, or place him on better ground than if he sold, or procured the sale to be made, without such authority.
An officer,by taking the course pointed out by law,may exempt himself from liability, for selling another’s property, as that of the deft in an ex’on; but the pl’tf, in the ex’on, in causing the levy, requiring the sale c., acts at his peril; the protection provided for the officer, does not extend to-him
In the case of Mc Gee vs. Ellis and Browning, 4 Littell, 251, this Court strongly intimated the liability of the plaintiff in an execution to the purchaser, when he is instrumental in causing the property of a stranger to be sold. They say, in the above case, that they would not be understood as applying the principles then settled “to “ cases where either the debtor or creditor has been im- “ mediately instrumental in causing the property of a “ stranger to be sold, and thus been instrumental in de- “ ceiving'the purchaser.”
And'indeed, we can see no just ground for rendering the sheriff liable, and exonerating the plaintiff in the execution, when the wrongful levy and sale have been brought about by his agency.
Tme Legislature have thought fit, owing to the perilous condition of the sheriff, to provide a plan for his exoneration, in authorizing him to summon a jury to try the right of property, whose finding against the claimant, or iailiipg to find, exempts him from responsibility. They ¡have not thought fit to provide the same security for the plaintiff.
Besides it is provided, that in case the jury finds the property not subject to the execution, the plaintiff may, notwithstanding, by giving him a bond of indemnity, compel him to go on and make sale. Can it be possible, that he is left at liberty to take this course, and delude bidders into the purchase of property under color *552 of process, and is not to be made liable to them. We cannot believe so.
Where the purchaser of goods #c. under execution, loses them, by the claim of a stranger, and the participation of the plt’f in the ex’on,inthelevy 4" sale, was such as to render him liable to the purchaser, held, that the amount of the purchase (not the value of the goods) is the sum that ought to be recovered.
Where an ex’on is returned satisfied, or credited, by a sum made by the sale of goods 1/ c. not the deft’s, and the pl’tf has had to refund the money to the purchaser, he may have the levy and return quashed, and be restored to his rights.
A special action on the case, or general indebitatus assumpsit, may be maintained, against the pl’tf in an ex’on, when he is liable to the purchaser of goods 4-c. sold under it.
But, second, to what extent is he liable ?
We think, he is liable at least to the extent of the consideration paid. It would be probably extending the rule too far, to make him a warrantor of the property, and liable for its value without regard to,the price given. Such a rule, in some cases, might act oppressively upon the creditor, who in the pursuit of his honest debt by the use of the legal means which the law had provided him, might be deceived himself, into the levy and sale of a stranger’s property, under the honest conviction, that the property was liable to his execution. If it -were liable, the purchaser would, in many instances, be the gainer by his advantageous purchase; and if it should turn out not to be liable, he should be content to have the price he gave restored to him. It is, then, upon the principle, that he has parted with his money through the agency of the plaintiff, for a consideration which has failed, that he has a right to his action. V
But it is contended that the plaintiff is deprived, by the return of the officer upon the execution, of a portion of his judgment, and if he be made to refund, thkt he will be a double loser of the amount: namely, the loss] of the sum refunded, and the loss of the same amountVof his debt due from the debtor. If this were his immediate condition, it has been brought about by his own wrongful act — by an effort on his part to pocket money), the proceeds of a sale of goods, not subject to his execution.
But we apprehend there would be no difficulty relieving himself from this condition, by moving the cfoutfi to quash the return on the execution, on proof of th(V fact, that the money intended to have been made; was), made by the sale of property not subject to the execution, and which he had refunded to the purchaser. |
Third. As we have said, that the purchaser wilbhave a right to recover back the consideration paid, it ik evident that he may attain that object by a special actifon of assumpsit, or by the general indebitatus assumpsit. | The latter form of action is sanctioned by this Court, in favor of assignees against assignors, upon assigned njotes; *553 "which is predicated on the failure of the consideration of the assignment, knd this form of action is sustainable in all cases, where the consideration paid is money, and is sought to be recovered on the ground' of fraud or the failur* of consideration. It is an equitable action, and will lie in all cases, where the defendant has money in his hands, which, ex equo el bono, or according to the principles of moral justice, he ought to refund.
Thdtthe Attorney who recovered a judg’t, directed ■the ex’on to be levied ,011 a certain slave,and attended the trial of the right of property, and the sale; thatthepltf ■lived near, and was also at the sale — are circuin stances proper to ■be proved to a jury, to render the pl’tf liable to -one who purchased the slave, at the sheriff’s Sale, and lost it by a better title; for an action will lia against one who agrees to a trespass committed for his benefit.
Lord Mansfield says, in the case of Lindon vs. Hooper, Couper, 414, “ that when goods are taken into execution, “ which are not the property of the pet-son against whom ■« execution is taken out, the owner may waive the tres- “ pass, and bring his action of indebitatus assumpsit, for “ the amount of the money for which the goods sold.” We see no impropriety in permitting the purchaser to have the same remedy.
Fourth. We think the testimony adduced in this case, was such as should have been left to the jury. The attorney, who obtained the judgment for the plaintiff in the execution, was the active agent in causing the slave to be levied on and sold* He coinmanded the sheriff to make the levy, attended the trial of the right-of property^ and in company with the defendant, attended the sale of the property. And if it were yielded that he could not act as the attorney of the defendant, without a new warrant after the recovery of judgment, yet as the trial excited much conversation in the neighborhood, and the present defendant lived but a few miles off, and accompanied the attorney to the sale, it may be presumed that he was apprized of what had been done by the attorney; and afterwards permitting the sale to go on his presence, it might have been presumed that he sanctioned and agreed to what was done. And it has been settled by this Court,-that if a man agree to a trespass which-has been done by another for his benefit, an action will lie against him. Lit. Sel. Ca. 118, Caldwell vs. Sacra; 3 Mon. 428, Harper and James vs. Baker.
Besides it was proven by one witness, that the defendant told the plaintiff, when the sale was going on, that he thought the title was good. Upon the whole, the evidence "was such as might have been deemed sufficient *554 by the jury, to satisfy them, that the agency and participation of the defendant in said sole w-ds-such as to render him responsible to the plaintiff. The Court, therefore, erred in. instructing the'jury to find as in ease of a non-suit.
It is, therefore, considered by this Court, that the judgment of the Circuit Court be reversed, and the cause remanded, that a new trial may be granted.