## LLOYD CLEMMENTS *v.* JAMES GREEN, ET AL.

**Real Estate Title—Failure of Title—Recovery of Purchase Money.**
When a plaintiff has been instrumental in causing the property of a stranger to be sold, the property not belonging to the defendant, the purchaser at such sale may recover back the price paid from such plaintiff.

### APPEAL FROM WASHINGTON CIRCUIT COURT.

#### November 25, 1876.

OPINION BY JUDGE ELLIOTT:

Prudence Brothers, after the death of her husband, had set apart to her a dower interest in his real estate, and said dower interest contained about twenty-five acres located in Washington county.

A man by the name of Rhinehart, having obtained a judgment against said Prudence Brothers, caused execution to be issued thereon and had the same levied on said dower tract of land, and the same was sold and bid off by Rhinehart. Afterwards J. R. Whorton, a judgment creditor of said Prudence Brothers, caused an execution to be levied on the equity of redemption of the said Prudence in and to said tract of land, and purchased the same at a sale thereof on the 20th day of April, 1868, at the sum of $80.82.

On April 2, a Mr. Selecman, an attorney-at-law, as he proves, drew up a deed in Whorton's name for said land, which was executed by the sheriff who sold the land on said Whorton's execution, and said deed was duly recorded, and shortly thereafter said Selecman, as attorney for appellees, caused an execution to issue on a judgment in their favor; and Whorton having delivered him a writing surrendering his title in said tract of land for sale, said Selecman delivered said writing to the sheriff, and directed him to levy on said land, which he did, and the same was sold at the court house door at Springfield, Washington county, on the 26th of May, 1876, and the appellant became the purchaser.

It appears from the evidence of the sheriff that all the information received about the title to said land he received from Mr. Selecman, appellees' attorney. Mr. Selecman knew at the time he wrote the deed to Whorton that the equity of redemption sold by the sheriff on Whorton's execution was of Prudence Brothers's dower or life estate in the land afterwards sold on the execution of appellees; and he could, if he had asked him, have learned from Whorton that he had never paid Rhinehart the sum bid by him for said land when sold under his execution, and that consequently Whorton had no right to a deed to said tract of land; but notwithstanding Selecman either did know or could have known by the least inquiry that Whorton had no title, he wrote a deed to Whorton, which the sheriff executed, and then he procured from Whorton the written surrender of the said land to the sheriff, to be levied on and sold in satisfaction of his client's execution debts.

At the sale the sheriff proclaimed to the bidders that the title was good; and he swears that all the proclamations as to title were authorized by Selecman, and all his knowledge of the title he got from Selecman. At the sale thus made the appellant bought the land at the price of $124.44; and shortly after his purchase and before he gave the sale bond he consulted Selecman, who told him he had a good bargain, and he then executed said bond. On the 26th of June, 1873, he paid off said bond, not having yet learned that he had acquired no title by his purchase.

As a general principle, the plaintiff in an execution is not responsible when the title fails to property sold under his execution, but to this there are exceptions. In *Sanders v. Hamilton,* 3 Dana 550, it was held that "If a plaintiff in an execution has been instrumental in causing the property of a stranger to be sold, we can see no principle of reason or of law that would exonerate him from responsibility to the purchaser." The exhibition and sale of property by an individual is regarded by law sufficient to make him a warrantor of the title, and we see no principle which would exempt him from liability when he has been instrumental in effecting the same object by color of execution. His execution affords him no warrant to levy upon the property of a stranger, and if he does it or procures it to be done he is guilty of an abuse of the process of the court which cannot sanctify the deed or place him on better ground than if he sold or procured the sale to be made without such authority. Now, if either of the appellees had directed the officer to make the levy or induced a bidder to buy by representing that Whorton's title was

good, there can be no doubt but that he would be responsible to appellant to the extent he has been damaged, and the fact that the levy was directed by appellee's attorney, and that he represented the title of Whorton to be good, was as binding on appellees as if made by them. The attorney, Mr. Selecman, was the agent of the appellees for the collection of their debt, and he swears himself that his agency continued till the debt of his principals was paid by the appellant.

In the case heretofore referred to of *Sanders v. Hamilton,* the court rested its judgment, against the principal, mainly on the ground that his attorney had been guilty of an abuse of the process of the court by directing the levy and sale of property that did not belong to the defendant in the execution. As Selecman was appellee's attorney and directed the levy and sale of the land of Whorton, and represented Whorton's title to be good, when the deed to Whorton for the land which he wrote himself only pretended to vest in him a life estate, and as appellant by reason of the levy and sale became purchaser, and as Whorton had no title to the land, we are of opinion that the said appellant is entitled to a judgment against the appellees for the amount he held and afterwards paid for the land, with interest from the time it was so paid. The judgment is *reversed* and cause remanded for judgment in conformity to this opinion.

*Brown & Lewis, for appellant.   L. R. Thurman, for appellees.*