## Mason, et al. v. Letcher Coal & Coke Company, et al.

(Decided November 28, 1922.)

### Appeal from Letcher Circuit Court.

1. Judicial Sales—Execution Upon Bond.—Where the debtor at a decretal sale becomes the purchaser and executes purchase money bonds to the master commissioner, which bonds are unpaid at maturity, execution may issue thereon and may be levied upon the land so sold as the property of the purchaser, because in such purchaser is both the legal and equitable title. This rule is contrary to that in which the purchaser is a stranger to the legal title.

2. Judicial Sales—Levy by Officer.—Although an officer levying an execution should go on the land to make an actual levy, or see the defendant or his agent and obtain consent to the levy, or see and apprise the defendant or his agent of the particular land upon which the sheriff levies the execution, yet if he make a specific entry on the execution by way of return, showing the estate he has levied on for sale, such officer does not have to prove the levy of process in any way except by his return which, until overcome by competent evidence is prima facie correct and binding upon the parties.

3. Judicial Sales—Return by Officer.—The return of the officer showing that he advertised the sale under execution, as the law directs, in the absence of some showing to the contrary, will sustain the presumption that he advertised the time and place of making the sale by written notices set up at the courthouse door and three other public places in the vicinity of the land for fifteen days next preceding the sale, and that the land to be sold was described in the notices of sale.

4. Judicial Sales—Newspaper Advertisement.—A sale of land made before 1901, as was the sale in this case, did not require a newspaper advertisement of the same.

5. Judicial Sales—Advertisement.—An advertisement for the sale of land under execution need not state the amount to be realized from the sale.

6. Judicial Sales—Section 696, Civil Code.—A sale had under section 696, Civil Code, may be for cash, as this section applies to sales under executions only.

F. W. STOWERS for appellants.

JOHN D. CARROLL, P. T. WHEELER, L. E. HARVIE, MORGAN & HARVIE and W. O. DAVIS for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Appellants are heirs at law of Dr. T. H. Mason, who died November 18, 1901. In October, 1895, Dr. Mason who was then indebted to John Q. Bentley in the sum of $265.00, evidenced by notes, executed to Bentley a mortgage on a definitely described tract of 190 acres of land, more or less, lying in Letcher county to secure said indebtedness, which was to become due one year from the date of the mortgage. The debt not being paid Bentley in November, 1899, brought a suit against Dr. Mason for his debt and to enforce his mortgage lien on the 190 acres of land. Mason made no defense, and judgment was entered in due course enforcing the mortgage lien of Bentley against the said land and directing that the same be sold by the master commissioner after being duly ad-

vertised. This judgment was carried out and a sale of the lands had at which Dr. Mason himself became the purchaser, bidding the amount of the debt, interest and cost for the lands, "less fifty acres to be taken off the west end of said tract," and executed his purchase money bonds, one due in six months for $127.32 and another due in twelve months for a like amount with one W. H. Banks as his surety. Before the last bond became due Dr. Mason had practically paid off the first bond, leaving only a balance of eight ($8.00) dollars and a few cents, but no part of the last bond had been paid. After the last bond became due Bentley caused executions to issue upon the bonds against the property of both Dr. Mason and his surety Banks. As neither Dr. Mason nor Banks, according to the evidence, had any personal property subject to execution, the two executions were levied upon the 190 acre tract of land which had been adjudged to be sold in the equity actions instituted by Bentley against Mason. Up to the time of the issual of the said executions appellants concede that all steps taken were regular, but they insist that the said lands, or at least a portion, bought in by Dr. Mason at the decretal sale and for which he had executed his purchase money bonds was not subject to execution, relying upon the case of Goodwin v. Wilson, reported in 71 S. W. 866, wherein it was held that the equity of the purchaser at a decretal sale was not subject to execution before the purchaser received a conveyance from the master commissioner investing him with legal title. This rule is well established but it has no application to the facts of this case. Dr. Mason at the time of the commencement of the equity action in the Letcher circuit court for the sale of the land was, as asserted by appellants, the holder of both the legal and the equitable title to the said 190 acres of land which was adjudged to be sold. The sale did not divest him of the legal title; but as Dr. Mason became the purchaser at the sale of his own land under a decree of the court, he continued to be not only the holder of the legal title but also the equitable title, and the land was, therefore, subject to execution against Dr. Mason.

It is next insisted that the sheriff made no levy on the land under the execution. We have held that to constitute a good levy on real estate the officer having the execution should go on the land and make an actual levy, or see the defendant or his agent and obtain consent to

the levy, or see and apprise the defendant or his agent of the particular estate upon which the sheriff intends to levy the execution, and the sheriff must make an official and specific entry on the execution or on an attached paper showing the estate upon which he has levied for sale.   McBurdine v. Overstreet, 8 B. M. 304; DeMint v. Ringo, 5 Ky. L. R. 504; Jones v. Allen, 88 Ky. 381., Just how the execution in this case was levied is shown only by the levy indorsed upon the execution at the time of the levy and by the report of the sheriff made concerning the sale and showing the land levied upon, the advertising, the sale and the purchaser.   The sheriff made the levy on March 5, 1901, and on that date made the following endorsements upon the execution:

"I have this day levied upon the following real estate, viz.:   One tract or boundary of land situated in Letcher county, Kentucky, and on Camp Branch creek of Rock House creek of the North Fork of Kentucky river and bounded as follows, viz.:   Beginning on a stone, thence an east course 172 rods; thence north 75 rods to John Hall's line; thence with John Hall's line to Jesse Bowen's line; thence with said Bowen's line to the top of the ridge to the land formerly owned by Andy Taylor now owned by said T. H. Mason; thence an easternly direction to the beginning, containing 190 acres, more or less, levied upon as the property of T. H. Mason to satisfy the said execution."

Before carrying out the sale the sheriff posted written or printed advertisements of the time, place and purpose of the sale, which read:

### "SHERIFF'S SALE.

"By virtue of execution No. 557 & 558, directed to me, which issued from the clerk's office of the Letcher circuit court in form of J. W. Bentley and against T. H. Mason, I, or one of my deputies will, on Monday, the 1st day of April, 1901, between the hours of 10 o'clock a. m., and 2 o'clock p. m., at the courthouse door in Whitesburg, county of Letcher, Kentucky, expose to public sale to the highest bidder, the following property (or so much thereof as may be necessary to satisfy the amount of plaintiff's debt, interest and cost), to-wit:

"One tract or parcel of land lying and being in the county of Letcher, state of Kentucky, and on the Camp

branch of Rockhouse creek of the North Fork of Kentucky river, and bounded as follows, viz.:

"Beginning on a stone, thence an east course 172 rods, thence north 75 rods to John Hall's line, thence with John Hall's line to Jesse Bowen's line, thence with said Bowen's line to the top of the ridge to the land formerly owned by Andy Taylor, now owned by T. H. Mason, thence an easterly direction to the beginning, containing 190 acres more or less.

"Levied upon as the property of T. H. Mason.

"Terms: Sale will be made cash in hand.

"This 5th day of March, 1901."

The sale was made April 1, 1901, and was reported in writing by the sheriff on that date, as follows:

"By virtue of executions Nos. 557 and 558, which issued from the clerk's office of the Letcher circuit court, on the 5th day of Feb., 1901, in favor of J. Q. Bentley and against T. H. Mason, I levied upon the tract of land described in the levy hereto attached, and after advertising the time, place and terms of sale and having said property appraised as required by law, I did on Monday, the 1st day of April, 1901, at the front door of the courthouse in the town of Whitesburg, Letcher county, Kentucky, and between the hours of 10 a. m. and 2 p. m. of said day, it being the 1st day of the Letcher county court, expose said land to sale by public outcry to the highest and best bidder when J. Q. Bentley, the plaintiff in execution, became the purchaser at the price of the debt, interest and cost of the two executions aforesaid and said Bentley being the highest and best bidder said land was knocked off to him. The defendant T. H. Mason had no property in this county subject to execution to make said debt. Said levy and appraise bill are here made a part hereof and said executions are hereby returned satisfied by said sale.

"This April 1, 1901."

The sufficiency of the advertisement of the execution sale is challenged upon two grounds: (1) That there was no written advertisement put up in three public places in the vicinity of the land fifteen (15) days next preceding the sale; (2) the advertisement which was put up at the courthouse door in the town of Whitesburg did not show the amount of the money to be raised by the sale.

The sheriff reported in writing that after advertising the time, place and terms of the sale and having said property appraised, as required by law, "I did on Monday, the first day of April, 1901, at the front door of the courthouse in the town of Whitesburg, Letcher county, Kentucky, between the hours of 10 a. m. and 2 p. m. of said day, it being the first day of the Letcher county court, expose said land to sale by public outcry to the highest and best bidder." Plainly he states that he advertised the time, place and terms of sale as required by law. If he did so he advertised the time and place of making the sale by written notices set up at the courthouse door and three other public places in the vicinity of the land for fifteen days next preceding the sale, and the land to be sold was described in the notices of sale the sale would be valid. The presumption is always indulged that a public officer in the execution of process and the entry of returns performs his duty in the way and manner directed by law, and this presumption continues until the contrary is shown. We have held in the case of White v. Laurel Land Company, reported in 26 Ky. L. R. 775, that where the return of the sheriff shows that he levied the execution upon the land and advertised the same as the law directs, the presumption is that the sheriff complied with the law and levied upon the land and advertised it as required by the statutes.

Appellants insist, however, that there was no newspaper advertisement of the same, as provided by section 14a-1, Kentucky Statutes. As this sale was made in 1901, before the passage of the act which is now section 14a-1 on March 24, 1902, that section has no application to this litigation, and no newspaper advertisement was required.

Neither do we regard as sound appellants' contention that the advertisement of the sale of the land under execution should have set forth the amount to be realized by the sale. The statutes on the subject require that the officer making the sale first advertise the time and place at which it is to be had by written notices set up at the courthouse door and in three other public places in the vicinity of the land for fifteen days next preceding the sale, but there is no provision that the advertisement shall contain any statement of the amount of money to be realized by the sale. By section 696, Civil Code, a different rule is provided for sales under order of court, for

in such cases it is specifically provided that the notices of sale must state for what sum of money it is to be made. This section, however, has no application to sales under execution.

Appellants take the position that the sale being for cash instead of upon a credit of six or more months, as provided by section 696, Civil Code, was invalid. Again, appellants are in error, for section 696 applies only to judicial sales and not to sales under execution. Moreover, subsection 3 of section 697, which reads: "They (the sale bonds) shall have the force of judgments; and on execution issued upon them no replevy shall be allowed, and sales shall be for cash," covers this case exactly, for the executions in question were issued upon the sale of bonds executed by Dr. Mason and his surety Banks, and in such sales no replevy is allowed and the sales must be for cash.

It is also insisted that the sale of 190 acres of land to satisfy a judgment of only about $250.00 is so flagrantly wrong as to invalidate the title of the purchaser. In support of this contention it is insisted section 1683, Kentucky Statutes, provides that when a tract of land is offered for sale to raise a stipulated amount and the property is bid up to that amount, it is then the duty of the sheriff or other officer conducting the sale to allow the defendant in the execution to designate the property to be sold, and in the absence of such designation it is the duty of the officer to declare which side or end of the land will be sold, and then cry the land and inquire if there is a purchaser who will take less than the whole boundary and pay the amount of the execution. All this apppellants contend was overlooked at the sale of the 190 acres of land which they now claim; but they offer no evidence to support this contention. On the other hand, the report of the sheriff showing that at the sale Bentley, the plaintiff in the action, became and was the highest and best bidder and that the land was knocked off to him; that Dr. Mason had no personal property in the county subject to execution. If the sheriff cried the property, as provided by section 1683, Kentucky Statutes, and inquired at the sale if there was any bidder who would pay the amount of the execution and take less than the whole of the land, it would not have been necessary for him to show the sum in his report of the sale, for the presumption runs with the process and the report and return that

the sheriff did his duty as required by law, nothing to the contrary appearing.

The chancellor having dismissed the petition of appellants seeking to recover the tract of land described as containing 190 acres, and there appearing no error in his decree prejudicial to the rights of appellant, the judgment is affirmed.

Judgment affirmed.